UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

EDWARD L. PAYER, individually, and as                05-CV-0226E(F)
  promoter for, equitable owner of, and on behalf
  of Transition Metals Technology, Inc., and
TRANSITION METALS TECHNOLOGY, INC.,
               Plaintiff,

     -vs-

THE SGL CARBON, LLC, successor by merger to
  SGL Carbon Corporation,
ONTARIO SPECIALTY CONTRACTING, INC.,
JON WILLIAMS,                         MEMORANDUM
JAMES F. WILLIAMS,
JAMES HARRY WILLIAMS and                  and
PETER HOFFMAN,
           Defendants.               ORDER[1]

_____

THE SGL CARBON, LLC, successor by merger to
  SGL Carbon Corporation,
          Counterclaim Plaintiff,

     -vs-

TRANSITION METALS TECHNOLOGY, INC. and
EDWARD L. PAYER,
          Counterclaim Defendants.

_____

## INTRODUCTION

     This action was originally commenced by plaintiffs Edward L. Payer and

Transition Metals Technology, Inc.[2] on May 14, 2004 in the United States District

Court for the District of New Jersey (04-CV-2281).  The matter was transferred to this

_____

     [1]This decision may be cited in whole or in any part.

     [2] When referred to individually, Edward Payer shall be referred to as "Payer" and
Transition Metals Technology, Inc. shall be referred to as "Transition Metals".  When referred
to collectively, they shall be referred to simply as the plaintiffs.

Court on April 1, 2005 pursuant to motion by defendants Ontario Specialty Contracting, Inc., Jon Williams, James F. Williams and James Harry Williams (collectively the "Williams defendants").   This case concerns a contract for the purchase of a parcel of industrial property owned by defendant SGL Carbon, LLC ("SGL") in Niagara Falls, New York.

Pending before the Court are the following motions: (1) SGL's motion for partial summary judgment seeking dismissal of those portions of plaintiffs' claims which seek the remedy of specific performance (Dkt. #46); (2) the Williams defendants' motion for summary judgment seeking dismissal of plaintiffs' amended complaint against them (Dkt. #51) which was filed under seal and has essentially been resolved by way of a request by plaintiffs for an Order of Dismissal pursuant to Rule 41(a)(2) of the Federal Rule of Civil Procedure (F.R.Cv.P.); (3) SGL's motion for sanctions pursuant to F.R.Cv.P. 11 (Dkt. # 56), also filed under seal; (4) SGL's second motion for summary judgment seeking dismissal of the remainder of plaintiffs' claims against it (Dkt. #82), also filed under seal which has not been briefed or argued because, at the request of the parties, it has been adjourned *sine die*[3]; and (5) plaintiffs' counsel's motion to withdraw (Dkt. # 89), also filed under seal.[4]

---

[3] At oral argument on the motion to withdraw, counsel for SGL requested that this motion be placed back on the Court's calender.  This motion will not be resolved herein.  A briefing schedule relative thereto will be forthcoming.

[4] A Confidentiality Stipulation and Order was filed on June 10, 2005 (Dkt. #36) with respect to certain confidential business secrets and proprietary information that may be disclosed during the course of discovery herein.  In this regard, interrogatory responses and
(continued...)

## BACKGROUND

Unless otherwise noted, the following facts are not in dispute.  In December 2002, the plaintiffs and SGL executed a Purchase and Sale Agreement for the sale of an approximately twenty-two acre parcel of industrial real property, together with improvements, owned by SGL and located at 6200 Niagara Falls Boulevard, Niagara Falls, N.Y.  The Agreement was negotiated with, and executed by, Payer as "CEO" of the purported buyer corporation, Transition Metals, for a purchase price of two million dollars, to be satisfied by a promissory note in the amount of 1.5 million dollars with the balance to be paid at closing.  Although initial negotiations for the sale of the property were with Payer individually, at some point prior to the contract execution, SGL was advised that the buyer of the property was to be listed on the contract as "Transition Metals Technology, Inc., a New Jersey corporation".  On May

---

[4](...continued)
documents produced were to be contemporaneously labeled "Confidential" or "Attorney's Eyes Only", or testimony so declared during oral deposition.  The Order states that "[a]ll information subject to confidential treatment in accordance with the terms of this ⁎⁎⁎ Order that is filed with the Court, and any pleadings, motions, or other papers filed with the Court disclosing any Confidential Information produced, shall be filed under seal and kept under seal until further order of the Court.  Where possible, *only confidential portions of filings with the Court shall be filed under seal.*"(emphasis added) (Dkt. #39, ¶10).  Since the entry of this Order, however, many of the parties' documents have been filed under seal *in their entirety.*  This has made it difficult for the Court to discern what information, if any, is confidential under the Order and what may be disclosed in resolving the instant motions.  It has also compromised the effectiveness of the Order which was intended to limit disclosure only of business proprietary and trade secrets, not all sensitive information.  Further, the Court must resolve the instant motions and cannot do so by remaining mute as to all of the documents filed by the parties.  It will therefore discuss whatever information it deems necessary for the resolution of the motions and will do its best to limit its disclosure of information it views to be subject to confidential treatment under the aforementioned Order.  The motion to withdraw was filed under seal for obvious reasons, other than the proprietary and trade secret issues.  The facts relative thereto will hence be discussed on a significantly more limited basis.

20, 2003 Payer signed an amendment to this contract as "President" of Transition Metals.  On June 30, 2003 Payer signed a promissory note as "CEO" of Transition Metals.  During this time, however, Transition Metals was not yet incorporated. Plaintiffs claim that SGL knew this.  SGL claims that it did not.  Transition Metals was not incorporated until or about June 15, 2004, approximately 18 months after the initial execution of the contract and over a month after this action was first filed in the District Court of New Jersey.

The contract contained numerous contingencies which had to be satisfied by all parties prior to closing.  SGL claims it satisfied all of its contingency obligations under the contract and repeatedly attempted to close on the purchase and that plaintiffs repeatedly failed to show up on numerous properly scheduled closing dates.

 Plaintiffs claim that SGL was in breach of contract and, as such, each of the closing dates it attempted to schedule was not proper.  Eventually, SGL informed plaintiffs that it had cancelled the agreement and found another buyer.  SGL was set to close on the new purchase in June 2004 but the Notices of Pendency filed with the instant suit effectively prevented the closing.  Also at some point during this time, plaintiffs had contacted the Williams defendants in an effort to secure financing for its proposed project on SGL's property.  The Williams defendants eventually purchased the property themselves from SGL subject to the aforementioned Notices of Pendency.

Plaintiffs brought the instant action against SGL for breach of contract, misappropriation of confidential information and tortious interference with contract. Within its first two causes of action, plaintiffs seek specific performance from SGL in the form of the transfer of the real property.  Plaintiffs' claims against the Williams defendants assert that they engaged in improper conduct in order to undermine plaintiffs' purchase agreement with SGL in order to purchase the property for themselves.  With respect to the claims against the Williams defendants, plaintiffs have agreed to dismiss the claims in response to a proposed Rule 11 sanctions motion by the Williams defendants and in accordance with what is known as the 'safe harbor' provisions therein; however, plaintiffs seek dismissal *without prejudice* and the Williams defendants seek dismissal *with prejudice*.

## DISCUSSION

### SGL's Motions

SGL seeks summary judgment dismissing those portions of plaintiffs' claims seeking specific performance and removing the Notices of Pendency, and has also moved for sanctions against plaintiffs.  The gravamen of both of these motions relates to various allegations and representations plaintiffs made prior to and during the course of this litigation which SGL claims were knowingly false and misleading regarding key elements of the case — to wit, the status of incorporation of Transition Metals and the ability of either Transition Metals or Payer to close on the property.

In its motion for summary judgment, SGL claims that the remedy of specific performance fails as a matter of law in this case because: (1) at the time the contract was signed, Transition Metals was not incorporated, hence no contract from which specific performance is sought was formed; and (2) even if a contract were formed, plaintiffs are not entitled to seek specific performance of same because they were never ready willing or able to perform its obligations under the contract (*i.e.*, to close on the property).

The Court cites current authority for the same familiar standard:

> "***[S]ummary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law." *D'Amico* v. *City of New York*, 132 F.3d 145, 149 (2d Cir.1998). A material fact is one that would "affect the outcome of the suit under the governing law," and a dispute about a genuine issue of material fact occurs if the evidence is such that "a reasonable [factfinder] could return a verdict for the nonmoving party." *Anderson* v. *Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *R.B. Ventures, Ltd.* v. *Shane,* 112 F.3d 54, 57 (2d Cir.1997). In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the moving party. *United States* v. *Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) (per curiam); *Donahue* v. *Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 57 (2d Cir.1987).

*Beth Israel Medical Center* v. *Horizon Blue Cross and Blue of New Jersey, Inc.,* 448 F.3d 573, 579 (2d Cir. 2006); *GlobalNet Financial.Com, Inc.* v. *Frank Crystal & Co., Inc.,* 449 F.3d 377, 382 (2d Cir. 2006). In response to a properly supported summary judgment motion, the party opposing summary judgment "may not rest upon the mere allegations or denials of the adverse party's pleading, but *** must set forth specific facts showing that there is a genuine issue for trial." F.R.Cv.P. 56(e); *GlobalNet Financial.Com, supra*; *see also Kerzer* v. *Kingly Mfg.,* 156 F.3d 396, 400 (2d Cir.1998) ("conclusory allegations, conjecture and speculation *** are insufficient to create a genuine issue of fact"). Furthermore, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex Corp.* v. *Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548 (1986).

The Court must first determine what state's law governs this contract dispute. This diversity case was originally brought in U. S. District Court in New Jersey. The transfer from New Jersey to this Court was pursuant to 28 U.S.C. §1404 (See Dkt. #29-2). Hence, the transferee court must apply the choice of law rules of the state in which the transferor court sits (*i.e.*, New Jersey). *Ferens* v. *John Deere Co.,* 494 U.S. 516, 521-32, 110 S.Ct. 1274, 1280-84 (1990).

The contract herein contains what is commonly known as a forum selection clause which provides that the "[a]greement shall be governed by, and construed in accordance with, the internal laws of the State of New York, without regard to

principles of conflict of laws". (Dkt. #46-2, Ex. A, ¶16.4).  "Generally, forum selection

clauses are *prima facie* valid and enforceable in New Jersey.  New Jersey courts will

decline to enforce a clause only if it fits into one of three exceptions to the general

rule ***".  *Caspi* v. *Microsoft Network, L.L.C.,* 323 N.J.Super. 118, 732 A.2d 528 (App.

Div. 1999)(internal citations omitted).  As no party in the present case has challenged

the validity of the aforementioned forum selection clause or its applicability to the

present motions, the Court need not discuss the matter in detail and shall apply

presumptive validity to the contract's forum selection clause.  Therefore, New York

law will generally be applied in resolving the pending motions.

SGL, however, has challenged the validity of Transition Metal's *corporate*

*status* as it relates to its ability to enter into a valid contract.  Irrespective of the

parties' selection of forum, the validity of Transition Metal's corporate status is

governed by the law of the state of its corporate domicile — to wit, New Jersey.  *See,*

*International Sport Divers Ass'n, Inc.* v. *Marine Midland Bank, N.A.,* 25 F.Supp.2d 101,

107 (E.D.N.Y. 1998), *citing Saxe, Bacon & Bolan, P.C.* v. *Martindale-Hubbell,* 710 F.2d

87, 89 (2d Cir.1983), *In re Servo Systems, Inc.,* 11 B.R. 879, 883 (Bankr.S.D.N.Y.1981)

and *Demarest* v. *Grant Et Al.,* 128 N.Y. 205, 215, 28 N.E. 645 (1891); *accord,* F.R.Cv.P.

17(b) ("The capacity of a corporation to sue or be sued shall be determined by the law

under which it was organized.").

Therefore, New Jersey law shall be applied to the questions of Transition

Metals' corporate status under the doctrines of *de facto* corporation and corporation

by estoppel, and New York law shall be applied to the questions regarding breach of contract and sanctions.

It is undisputed that Transition Metals was not incorporated at any time when Payer signed the Purchase and Sale Agreement, the amendment thereto or the promissory note as "CEO" and "President", respectively.  Clearly, Transition Metals was not a *de jure* corporation when it entered into the contract and SGL argues that neither is it entitled to *de facto* corporate status or corporation by estoppel.

New Jersey had long recognized the doctrine of *de facto* corporation[5] until certain language in the New Jersey Business Corporation Act, enacted in 1968, called into question its continued viability.[6]  Since then, several intermediate appellate courts continued to apply the doctrine[7].  However, in 1999 the United States District

---

[5] *Asplund* v. *Marjohn Corp.,* 66 N.J.Super. 255, 168 A.2d 844 (App.Div. 1961); *Culkin* v. *Hillside Restaurant,* 126 N.J. Eq. 97, 8 A.2d 173 (N.J.Ch. 1939); *Paragon Dist. Corp.* v. *Paragon Laboratories,* 14 B.Stockton 224, 129 A. 404 (N.J.Ch. 1925); *McCarter* v. *Ketcham,* 43 Vroom 247, 62 A. 693 (N.J.Err. & App. 1905); *Attorney General Ex Rel. Pattee* v. *Stevens,* 1 N.J. Eq. 369, 1831 WL 2468 (N.J.Ch. 1831).

[6] The provision in question states as follows:
> "14A:2-7. Certificate of Incorporation
> \*   \*   \*   \*   \*
> "(2) The certificate of incorporation shall be filed in the office of the Secretary of State.  The corporate existence shall begin upon the effective date of the certificate, which shall be the date of the filing or such later time, not to exceed 90 days from the date of filing, as may be set forth in the certificate.  *Such filing shall be conclusive evidence that all conditions precedent required to be performed by the incorporators have been complied with and, after the corporate existence has begun, that the corporation has been incorporated under this act.* \*\*\*"

N.J. Stat. Ann. § 14A:2-7(2) (emphasis added).  It is this highlighted language and the Commissioner's Comments accompanying it that served as the basis for these questions.

[7] *See, Cantor* v. *Sunshine Greenery, Inc.,* 165 N.J.Super. 411, 414, 398 A.2d 571, 573
(continued...)

Court for the District of New Jersey, interpreting New Jersey law and predicting how the New Jersey Supreme Court would resolve the issue, held that the enactment of the New Jersey Business Corporation Act in 1968 effectively abolished the doctrine of *de facto* corporation in New Jersey. *Pharmaceutical Sales and Consulting Corp.* v. *J.W.S. Delavau Co., Inc.,* 59 F.Supp.2d 408, 413 - 414 (D.N.J. July, 1999) (*Delavau II*). Based on the foregoing, Transition Metals is not entitled to *de facto* corporation status.

In an earlier opinion in that same case, however, the same Court held that the doctrine of corporation by estoppel survived the enactment of the statute. *Pharmaceutical Sales and Consulting Corp.* v. *J.W.S. Delavau Co., Inc.,* 59 F.Supp.2d 398, 405 (D.N.J. May, 1999) (*Delavau I*). *Delavau I* found that "[t]he doctrines of *de facto* incorporation and corporation by estoppel are two related but distinct concepts" and "the fact that § 14A:2-7(2) of the Act could be construed to have abolished the *de facto* corporation concept has no bearing upon the continued vitality of the corporation by estoppel construct under New Jersey law." *Ibid.* (Internal citations omitted); *see also Timberline Equip. Co.* v. *Davenport,* 267 Or. 64, 514 P.2d 1109, 1111 (1973) (found that similar language in Oregon statute effectively abolished *de facto* corporate concept in Oregon; did not address whether same language abolished corporation by estoppel, but noted that the two concepts are different); *but*

---

[7](...continued)
(App.Div.1979); *Trenton Dressed Poultry, Inc.* v. *Jamson, Inc.,* 116 N.J.Super. 327, 282 A.2d 405, 406 (App.Div.1971).

*see, Robertson* v. *Levy*, 197 A.2d 443, 446-47 (D.C.App.1964) (interpreting identical language and holding that such abolished both doctrines of corporation by estoppel and *de facto* corporation).  The Court will consider whether corporation by estoppel status is warranted.

Plaintiffs urge this Court to apply the findings in *Delavau I* to the facts of the instant case.  The plaintiff therein, a pharmaceutical sales company, sued defendant, a manufacturer, claiming that defendant failed to pay commissions due and owing pursuant to a sales and commissions contract entered into by the parties.  The defendant made a motion for summary judgment seeking dismissal of the claim contending that plaintiff was not a lawful corporation at the time of the contract, hence the contract was invalid and unenforceable.  The plaintiff conceded that it was not incorporated at the time it entered into the contract with defendant, but sought recognition as a corporation by estoppel so that defendant could not escape liability on such a technicality.  The defendant argued that plaintiff could not rely on these principles because the equitable principles of estoppel are premised upon a lack of fraud in the dealings of the parties and the individual with whom they negotiated knew that the corporation did not exist and hid this fact from them.  Citing a line of cases which it found to be persuasive, and with which this Court agrees, the *Delavau I* Court reasoned that

> "[T]he weight of authority holds that in this context, where a defendant seeks to avoid potential liability to a would-be corporate plaintiff by contending that the plaintiff was or is not a lawful corporate entity, the doctrine of corporation

by estoppel applies such that plaintiff may pursue the contract claim against the defendant despite plaintiff's noncorporate status.  The rationale underlying this approach in this factual circumstance is premised upon the courts' desire to effectuate the parties' intent in entering into the contractual arrangement at issue. *Bradley, supra* at 560 (citing cases) ("If the defendant thought it was dealing with a corporation, and later discovered it was in fact dealing with a defective corporation, absent prejudice to the defendant, there is no reason to let the defendant escape liability" based upon a technicality such as defective incorporation). In essence, these cases recognize that permitting the defendant (person or entity) to deny the fact of plaintiff's corporate existence so as to escape potential liability under a contractual arrangement would result in a windfall to defendant beyond that which was expected at the time of the execution of the contract."

*Delavau I*, 59 F.Supp.2d at 406, 407 (some internal citations omitted).

The *Delavau I* Court therefore applied corporation by estoppel status to plaintiff company[8] and denied the defendant's summary judgment motion.  In analyzing the doctrine, however, the Court, both in *Delavau I* and *Delavau II,* noted that the application of the doctrine to a particular case is fact and context driven. *Delavau I*, 59 F.Supp.2d at 406; *Delavau II*, 59 F.Supp.2d at 415, fn. 9.  The Court herein is therefore mindful of this when analyzing the doctrine and its applicability to the present case.

The Court will consider three key questions (as discussed in *Delavau I* [9]) in determining whether or not to apply the doctrine of corporation by estoppel herein.

_____

[8]  And rejected defendant's argument regarding the individual's purported misrepresentation regarding the corporate status.

[9] *Delavau I*, 59 F.Supp.2d at 407, 408.

First, would permitting defendant to avoid liability under the contract based upon a technicality such as plaintiff's corporate status be contrary to general principles of New Jersey law?  This is a global question that has been answered in the affirmative by the District Court in New Jersey, with which this Court agrees.  *See Delavau I*, 59 F.Supp.2d at 407.

Second, would accepting defendant's argument be contrary to the parties' intent at the time of the agreement or result in a windfall to defendant?  After review of the voluminous evidence submitted by the parties, the Court finds that, although there appears to be no windfall to the defendant, accepting its argument would be contrary to the parties' intent at the time the contract was formed.  SGL has submitted no credible proof that the corporate status of Transition Metals was in any way an important factor in the negotiation or execution of the contract. *Compare, International Sport Divers, supra,* 25 F.Supp.2d at 110 (defendant provided evidence that it required plaintiff to incorporate specifically as part of the contractual arrangement).  The proof is undisputed that the contract negotiations began with Payer, individually, as the purchaser, and that it was Payer who decided that Transition Metals would be the purchaser.  In fact, SGL's President stated that, other than clarifying for legal documentation, he would have done nothing differently in negotiating and forming the contract had either Transition Metals, as a corporation, or Payer, as an individual, been the intended purchaser. (See, Dkt. #65-2, p. 2 - 3).[10]

_____

[10] The Court is not as concerned about whether or not SGL knew Transition Metals had
(continued...)

Third, has the defendant relied on plaintiff's alleged misrepresentations regarding its corporate status to its detriment?   SGL has provided no credible evidence that Payer purposefully misrepresented Transition Metal's corporate status[11], or that SGL relied on such alleged corporate status to its detriment.   Further, there is no evidence submitted that the contract failed in any way because Transition Metals was not incorporated.   It is clear from the evidence before the Court that this was a negotiation driven by, and a contract formed as a result of, negotiations between Payer and SGL.   Hence, execution and performance had little to do with Transition Metal's corporate status and SGL did not rely thereon to its detriment.

Based on the above, the Court apples corporation by estoppel status to Transition Metals.[12]

---

[10](...continued)
incorporated by the time the contract was executed as the parties seem to be.  The evidence submitted suggests that the purported lack of knowledge of Transition Metals' corporate status was more a matter of inattentiveness than intentional deceit.    This inattentiveness further indicates that this was not a material fact in the negotiations between the parties for the sale of this property.  The transfer clause in the contract is also evidence that the ultimate purchaser of the property was not a subject of import to SGL.

[11] *See also,* fn. 10

[12] One New Jersey Superior Court case deserves notation herein because of the striking similarities of its facts to the facts of the case herein.  *See K & J Clayton Holding Corp.* v. *Keuffel & Esser Co.*, 113 N.J.Super. 50, 272 A.2d 565 (Ch.Div. 1971).  The plaintiff corporation in *K & J* brought suit for specific performance of a contract for the purchase of real property wherein an individual negotiated and signed the contract as "president" of a not yet existing corporation. Specifically, the contract was executed in August and specified a closing date in November. The certificate of incorporation was filed in October.   *K & J* does not address either doctrine of *de facto* corporation or corporation by estoppel, but addresses the dispute pursuant to the theory of promotion and ratification.   It is not applicable herein because this analysis relates to formation and breach of contract -- issues in the present case, which are to be governed by New York law.  Notwithstanding, the Court in K & J allowed the suit, finding that the individual was

(continued...)

SGL argues that, even if Transition Metals was granted corporation by estoppel status, it cannot seek specific performance herein because it was never ready, willing and able to close on the purchase of the property. These are questions related to formation and breach and will therefore be resolved pursuant to New York law. *See, Ferens, supra; Caspi, supra.*

The parties agree that, in order to seek specific performance in New York, plaintiffs must be able to prove that they were prepared to perform their obligations under the contract — to wit, Transition Metals is required to prove that it was ready, willing and able to close on the purchase of the property. SGL claims there is no genuine issue of disputed material fact that establishes that plaintiffs were ready, willing or ever able to close on the purchase.

It is undisputed that SGL scheduled numerous closing dates and that plaintiffs did not close on any of those dates. Plaintiffs claim, however, that the dates were not properly scheduled, as SGL had not performed its obligations under the contract and was in breach thereof. Plaintiffs therefore argue that they do not yet need to prove

---

[12](...continued)
a "promoter" for the "embryonic or proposed corporation". 113 N.J.Super. at 53. The Court further found that, once the corporation legally came into existence it could adopt the contract and hence would be entitled to all the rights, and assume full liabilities, under the contract. Id. at 53 - 54 ("Even though the embryo corporation was not able to contract, yet it could adopt a contract made for its benefit. Having adopted the contract, the corporation may then sue for its enforcement. One mode of adopting the contract is the institution of suit thereon by the corporation. Among the remedies available on such a suit is specific performance." (Internal citations omitted)). Although Payer initially brought suit in New Jersey "as promoter" for Transition Metals, in light of the Court's finding of corporation of estoppel, it need not address whether or not there is effectively equivalent New York law on this issue.

that they are able to close on the property.  SGL argues that, in order to seek specific performance, plaintiffs must prove they were ready, willing and able to close, regardless of whether or not SGL was in breach.  The dispute as to whether or not the closing dates were properly scheduled is not the focus of the Court.[13]

It is well settled in New York that, in order to be entitled to specific performance of a contract, a plaintiff must demonstrate that he was ready, willing and able to perform his obligations under the contract regardless of any breach alleged against a defendant.  *Zev* v. *Merman,* 134 A.D.2d 555, 557 (2d Dept. 1987), *aff'd* 73 N.Y.2d 781 (1998); *see also  Internet Homes, Inc.* v. *Vitulli,* 8 A.D.3d 438 (2 Dept.,2004); *EC, L.L.C. v. Eaglecrest Manufactured Home Park,* 275 A.D.2d 898 (4th Dept.,2000).  The Court will therefore focus on whether or not plaintiffs were ready, willing and able to close on the property at any time prior to the filing of the suit seeking specific performance.

SGL claims that plaintiffs at no time had the financial ability to close on the purchase of the property.  Under the terms of the contract, the purchase price for the property was two million dollars, to be paid with a 1.5 million dollar promissory note and five hundred thousand dollars in cash at closing.  SGL has established that Transition Metals did not, at any relevant period herein, own any property and that Payer did not own any property or have a bank account. (Dkt. #49, ¶29 and Dkt. #66,

---

[13] The Court does note, however, that plaintiff did not object to any of the dates at the time they were scheduled.

¶29).  Further, at his deposition, personal counsel for Payer[14] testified that Transition Metals was unable to obtain bank or IDA (Niagara Falls Industrial Development Agency) financing for the transaction and that neither he nor Payer was willing (or able, as in Payer's case) to execute personal guarantees to secure financing. (Dkt. #50, Ex. G).  It is also undisputed that the 1.5 million dollar promissory note executed by Payer in June 2003 was on behalf of a non-existent corporation with no apparent assets.

The Court finds that the execution of a promissory note on behalf of a non-existent corporation with no assets demonstrates neither performance nor an ability to perform under the contract.  Likewise, an affidavit from Payer's son stating that, at a family outing while discussing the subject, he and his brother offered to provide his father with whatever funding he needed is insufficient to defeat SGL's properly supported motion.  *See Lamanna* v. *Wing Yuen Realty, Inc.,* 283 A.D.2d 165, 166 (1st Dept. 2001)("[O]ther than conclusory assertions concerning numerous benefactors, including a lotto winner, who were waiting to lend him money, plaintiff has failed to demonstrate that he possessed, at any time prior to the commencement of this action, the financial wherewithal to complete the purchase of the building in question.").

The plaintiff submits evidence of a variety of attempts and efforts made to secure financing for the purchase of the property under the contract.  What this

---

[14] Who was also to be an investor in the business venture related to the purchase of this property.

evidence makes clear is that, despite these efforts, plaintiffs did not have the financing *in place* at any time prior to the filing of the lawsuit seeking specific performance.  *See Internet Homes, supra* at 439 ("The plaintiff's unsubstantiated assertions that a line of credit *could be* secured or that a closely-related corporation would supply the funds and the conclusory allegation that it was ready, willing, and able to perform were insufficient to satisfy its burden" (emphasis added and internal citations omitted)); *Lamanna*, *supra*; *Zev, supra at* 557 (evidence established that the plaintiff did not *have* the necessary funds to consummate the sale on either of the dates scheduled, regardless of the claims of defendant's breach).  As such, plaintiffs have failed to make a showing sufficient to establish that they were able to perform under the contract.  Accordingly, they are not entitled to specific performance. SGL's motion for partial summary judgment will be  granted, with direction to plaintiffs to remove the Notices of Pendency placed on the subject property.

Further, the Court has reviewed SGL's voluminous motion for Rule 11 sanctions[15] (Dkt. #56) and finds that the circumstances of this case do not warrant sanctions.  For all the parties puffing and blowing, the Court finds that plaintiffs' statements were nothing more than zealous advocacy.  SGL has failed to convince the Court that Payer, Transition Metals, or any of their legal counsel purposely misrepresented material facts.

---

[15] *See* F.R.Cv.P. 11(c).

Much of SGL's motion relies on the arguments presented in its summary judgment motion, *i.e.*, that plaintiffs' suit for specific performance was improper due to Transition Metal's corporate status and lack of finances to complete the transactions.  These issues are addressed above and will not be belabored.  Contrary to SGL's argument, the Court has held that Transition Metals is entitled to corporation by estoppel status.  Although the Court found in favor of SGL in holding that plaintiffs cannot seek specific performance herein, it did not find that plaintiffs' counsel's arguments on this issue were lacking in merit.

Further, Transition Metals' statements that SGL knew of its corporate status can be deemed neither false nor material.  Evidence was submitted that initially, SGL representatives knew that Transition Metals was not yet incorporated.  Communication on the issue of just when incorporation did, or was to, occur seemed to drop off, not because of intentional deceit, but because it clearly was not an issue of import in the negotiations.[16]

Lastly, in light of New Jersey law that may have allowed the suit exactly as originally filed,[17] it cannot be found that the filing of the suit for specific performance in New Jersey was patently improper.  The Court finds no evasion, fraud or misrepresentation in counsels' factual or legal contentions on these issues and sanctions will not be awarded.

---

[16] *See,* Dkt. #65-2, p. 2 - 3; *see also,* fn. 10.

[17] *See,* fn. 12.

## The Williams Defendants' Motion for Summary Judgment

The Williams defendants filed a motion for summary judgment on September 13, 2005. (Dkt. #51).  Plaintiffs have filed no opposing papers to this motion because, at some point around the time of the filing of the motion, the Williams defendants served but did not file a motion for Rule 11 sanctions against plaintiffs.[18]  Within the twenty-one day 'safe harbor' provision of Rule 11, plaintiffs' counsel contacted defendants' counsel and agreed to dismiss all claims against the Williams defendants.  At that time, however, the parties did not discuss whether the dismissal was to be with or without prejudice.  It was not until a Stipulation of Dismissal was circulated for review that the issue arose.

The Williams defendants argue that dismissal 'with prejudice' is appropriate because of the nature of the summary judgment motion which attacks plaintiffs' claims as baseless at law.  In other words, because there is neither a factual or legal basis for the suit, it should be dismissed with prejudice.

Plaintiffs admit that, as of the filing of the motion, there were no factual (and therefore legal) basis for the claims they brought against the Williams defendants, but urge that the dismissal be 'without prejudice' in the event that facts are discovered during the course of discovery in this case that eventually support such claims.  It is noted that, at the time of the filing of the summary judgment motion and the serving of the sanctions motion, there had been limited discovery in this case.

---

[18]*See,* fn. 15.

Specifically, the Williams defendants had not been subject to depositions and only limited document discovery had been exchanged.   Plaintiffs urge that dismissal without prejudice is appropriate in light of the fact that the decision to dismiss was in response to the Rule 11 sanctions motion and is based in part on untested factual assertions therein.

Defendants served plaintiffs with the Rule 11 sanctions motion.  Upon doing so, plaintiffs were given the benefit of the Rule's twenty-one day 'safe harbor' provision.  Plaintiffs offered to withdraw all claims against the Williams defendants within that time period.  The problem lies with the fact that plaintiffs are essentially prevented from unilaterally doing so because the Williams defendants have entered an answer herein.  This implicates the provisions of Rule 41(a)(1)(ii), requiring that all parties stipulate to the dismissal.  Plaintiffs cannot accomplish dismissal by this means because the Williams defendants will not agree to a Stipulation of Dismissal without prejudice.  In order to take advantage of Rule 11's "safe harbor" provision, plaintiffs must therefore seek an order of dismissal under Rule 41(a)(2). *See Cooter & Gell* v. *Hartmarx Corp.,* 496 U.S. 384, 394 (1990) (Once the defendant has filed and served a summary judgment motion or answer, the plaintiff may dismiss the action only by stipulation, Rule 41(a)(1)(ii) or by order of the court, "upon such terms and conditions as the court deems proper" Rule 41(a)(2)).[19]

---

[19] While no party has formally made a motion pursuant to F.R.Cv.P. 41(a)(2), both parties advocated for such an order at an October 14th court appearance.  Both parties have outlined their respective positions on this subject through unfiled written submissions to the Court sent
(continued...)

In offering to withdraw the challenged claims, plaintiffs have essentially complied with Rule 11.  The Court finds that to require the dismissal to be with prejudice on the basis of the defendants' arguments would be to effectively grant the Williams defendants' motion for summary judgment without giving plaintiffs a full and fair opportunity to respond to it and would effectively chill plaintiffs' options under rule 11's 'safe harbor' provision.  However, some consideration of the pending motion is appropriate.  *See Ratkovich* v. *Kline,* 951 F2d 155, 158 (7th Cir. 1991)(a district court may impose such terms and conditions as it believes necessary to protect the other parties from prejudice \*\*\* several factors that a district court may consider in making its determination as to whether a defendant has suffered legal prejudice include \*\*\* the fact that a motion for summary judgment has been filed by the defendant).  However, the Court considers it with respect to the effort and expense of making it and not the merits thereof.  In this regard, it is noted that in timing the sanctions motion and the summary judgment motion in the manner in which they did, the defendants created unnecessary expense for themselves.  Had they first served the papers regarding the Rule 11 sanctions and waited for plaintiffs' response during the 'safe harbor' time period, the motion for summary judgment would have proven to be unnecessary.

---

[19](...continued)

both before and after the appearance in court.  In the interests of justice and judicial economy, therefore, the Court will deem the motion as having been made by plaintiffs (the first to bring the matter to the Court's attention by letter dated October 11, 2005), argued and submitted as of October 21, 2005, the date of the last letter sent to the Court regarding this matter.

The plaintiffs are seeking an order of dismissal without prejudice, as is the common practice under both Rule 11 and Rule 41(a).  Defendants seek dismissal with prejudice, a practice not usually engaged in without good cause.  The Court initially notes that it cannot force plaintiffs to accept the dismissal with prejudice.  If the Court were to convert plaintiffs' request for an order of dismissal without prejudice into one with prejudice, it would be required to allow plaintiffs to withdraw the motion for the order of dismissal and proceed with the claims against the Williams defendants. *Gravatt* v. *Columbia University*, 845 F.2d 54, 55 - 56 (2d Cir. 1988).  It seems clear to the Court that neither party wishes that the claims proceed at this time.

The Court has considered other factors, such as the extent to which the Williams defendants have been subjected to discovery (they have not even been subject to depositions), the duplicative expense of re-litigation elsewhere (not an issue in the present case, as plaintiffs have stated that they do not intend to re-file claims against these defendants unless further discovery in this case strongly warrants it), and the extent to which defendants have had to prepare for trial (there has been very little, if any, trial preparation herein).

The Court finds that dismissal of plaintiffs claims against the Williams defendants *without prejudice* and upon certain terms is appropriate here — the terms being that plaintiffs will be required to pay the Williams defendants' reasonable  attorney's fees to be determined by the Court from the commencement

of the suit in New Jersey to the serving of the sanctions motion (but not the summary judgment motion) *in the event that* plaintiffs re-file any of the claims herein or any other claims relevant to this transaction, against any of the Williams defendants.  In that event, the Williams defendants are to submit a bill of costs to the Court for approval.

### Plaintiffs' Counsel's Motion to Withdraw

The Court has considered the parties submissions, has heard oral argument on the matter and, upon due consideration, hereby grants plaintiffs' counsel's motion (Dkt. #89).  Plaintiffs shall have sixty days in which to find new counsel or proceed *pro se*.

### CONCLUSION

For the reasons stated herein, it is hereby **ORDERED** as follows:

SGL's first motion for partial summary judgment **(Dkt. #46)** seeking dismissal of those portions of plaintiffs' claims seeking of specific performance is **GRANTED** and plaintiffs are hereby directed to remove all Notices of Pendency placed on the subject property;

SGL's motion for Rule 11 sanctions **(Dkt. #56)** is **DENIED**;

Plaintiffs claims against the Williams defendants is DISMISSED WITHOUT PREJUDICE pursuant to F.R.Cv.P. 41(a)(2), under the terms stated above;     In light of the Rule 41(a)(2) dismissal, the Williams defendants' motion for summary judgment **(Dkt. #51)** is **DENIED** as moot;

Plaintiffs counsel's motion to withdraw **(Dkt. #89)** is **GRANTED.**  Both lead counsel, Mark Oberstaedt and Michael L. Volin from Archer & Greiner, PC, and local counsel, Daniel W. Gerber from Goldberg Segalla, LLP, shall be removed from the docket herein.   Plaintiffs shall have sixty days in which to find new counsel or proceed *pro se*.

**SO ORDERED.**

DATED:       Buffalo, N.Y.

September 21, 2006

_____
/s/ John T. Elfvin
JOHN T. ELFVIN
S.U.S.D.J.